UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PAUL ANDRE BLANTON,

                Plaintiff,                Case No. 1:10-cv-1187

v.                                                Honorable Robert J. Jonker

PATRICIA CARUSO et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff Paul Andre Blanton presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Newberry Correctional Facility, though the actions giving rise to the complaint occurred while he was housed at the Lakeland Correctional Facility (LCF). He sues MDOC Director Patricia Caruso and Deputy Director Dennis Straub, together with the following LCF employees: Warden Carol Howes; Deputy Warden Bonita Hoffner; and Lieutenant K. McConnell.

Plaintiff alleges that, on November 13, 2008, his cell was searched. Plaintiff later was placed in handcuffs and was issued two major misconduct tickets, one for possession of dangerous contraband, and one for possession of forged documents/forgery/smuggling/possession of dangerous contraband. According to the complaint, the contraband in issue was his musical equipment, all of which he acquired under a prior prison policy that permitted prisoners to receive property dropped off or ordered by family members. The musical equipment was confiscated, and Plaintiff was placed in administrative segregation until the hearing. Plaintiff alleges that his family was required to bear the expense of picking up the musical equipment. Three days after the cell search, November 16, 2008, Plaintiff was transferred from Level-II confinement at LCF to Level-IV confinement at Carson City Correctional Facility (DRF). Plaintiff's legal property, however, was transferred to the wrong facility, so Plaintiff did not have access to his receipts for the musical equipment at the time of his

misconduct hearing or request for rehearing. He was convicted of the misconducts. He sought rehearing, which was denied.[1]

Plaintiff alleges that he has been deprived of his musical property and transferred without due process of law and in violation of MDOC policy. He also alleges that he was deprived of access to his legal property and his attorney for the misconduct proceedings, again without due process and in violation of MDOC policy. He contends that, as a result of the misconduct convictions and transfer to another prison, he has lost his institutional job, honorary housing status, rehabilitative programs, garden plot, band/music practice slot and possession of his musical equipment. All of these deprivations, he alleges, deprived him of his rights under the Fifth, Sixth and Fourteenth Amendments. In addition, he asserts that he was transferred in retaliation for exercising his right to petition the government, ostensibly in violation of the First, Fifth and Fourteenth Amendments. Further, he argues that, because of his transfer to another part of the state, his visitation with his mother after his father's death was limited, in violation of his right to familial association and the Eighth Amendment.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

---

[1] Plaintiff subsequently sought review of the administrative decision in the Ingham County Circuit Court, which was denied as untimely. He sought reconsideration, which also was denied. Plaintiff then applied for leave to appeal to the Michigan Court of Appeals, which denied leave for lack of merit. Plaintiff sought leave to appeal to the Michigan Supreme Court. The supreme court denied leave to appeal on July 26, 2010.

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010 (holding that the *Twonbley/Ashcroft* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Plaintiff does not allege that he has been subjected to a sanction that will inevitably affect the duration of his sentence, such as a loss of good-time credits. He argues instead that the

confiscation of his property, the increase in his security classification, his transfer to another prison, and his consequent losses of his job, privileges and rehabilitation programs are hardships of sufficient significance to be protected by the Due Process Clause.

### 1. Removal of musical property

Plaintiff contends that his due process rights under the Fifth and Fourteenth Amendments were violated when Defendants confiscated his musical equipment in violation of prison policy. Plaintiff does not claim that his musical equipment was stolen or destroyed or that he was otherwise deprived of ownership of the property.[2] Instead, his property was merely removed from his prison cell and he was permitted to make arrangements for sending it elsewhere. Plaintiff's family was given the opportunity to pick up musical equipment, and they did so. His claim, therefore, is limited to the contention that he had a right to keep his musical equipment in his cell because prior policy had allowed him to possess such property.

Plaintiff's claim that the removal of his property from his cell violated MDOC policy does not state a claim under § 1983. Defendants' alleged failure to comply with an administrative

---

[2]Even had Plaintiff alleged that his property was stolen, his due process claim would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in other part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Plaintiff does not allege that he was deprived of his musical equipment pursuant to MDOC policy; instead, he argues that the prison policy was incorrectly applied to him. As a result, any claim based on the taking of his musical equipment would be premised upon allegedly unauthorized negligent or intentional acts of a state official. Plaintiff therefore must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, the Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Accordingly, any claim that his musical instrument was taken without due process would be barred by *Parratt*.

rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, prisoners do not have a constitutional right to maintain an unlimited amount of property in their cells. *See Friend v. Chapleau*, No. 95-5628, 1995 WL 607835, at *2 (6th Cir. Oct. 13, 1995) (holding that the defendant did not have a constitutional right to possess unlimited amounts of legal property); *see also Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the . . . analysis set forth in *Sandin*."). Plaintiff fails to allege how the limitation on his in-cell possession of musical property is sufficiently atypical and significant to amount to a liberty interest protected by the Due Process Clause. *Id.*

### 2. Increase in security classification

Plaintiff next suggests that he was deprived of due process by the increase in his security classification from Level II to Level IV. Prisoners do not have a protected liberty interest

in the procedures affecting their classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of prison life. *Id.*, *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification). Without a protected liberty interest in his security classification, Plaintiff cannot successfully claim that his due process rights were violated.

### 3. Transfer

Plaintiff next objects to being transferred from LCF to DRF without a hearing. The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir.

Mar. 22, 1993). Because he had no liberty interest in remaining at LCF, Plaintiff fails to state a due-process claim based on his transfer from LCF to DRF.

### 4. Loss of other privileges

Plaintiff contends that the loss of his prison employment and participation in rehabilitation programs caused by his transfer are sufficiently serious to implicate a right to due process. He also argues that, because his transfer effectively limited his visitation with his mother following the death of his father, he has been deprived of due process.

Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in rehabilitative programs. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"). Similarly, prisoners are not entitled to a particular prison job. *See e.g.*, *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *see also Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs). Because Plaintiff has no liberty interest in rehabilitative programs or employment, he was not

entitled to a hearing before he was transferred. He therefore fails to state a due process claim against Defendants.

Moreover, the mere fact that his transfer to a prison in another part of the state affected his 82-year-old mother's ability to visit him does not amount to an atypical or significant deprivation. As the Sixth Circuit held in *Bazzetta II*, 430 F.3d at 803, even a regulation that expressly restricts a prisoner's visitation rights does not ordinarily result in an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* (citing *Overton v. Bazzetta (Bazzetta I)*, 539 U.S. 126 (2003) (addressing the constitutionality of visitor restrictions under the First Amendment)). Here, Plaintiff does not contend that his mother's visits – or any other visits – are barred. He alleges only that, because his mother has difficulty traveling, she is unable to visit him at the more distant location. Such allegations fall far short of demonstrating a liberty interest protected by procedural due process. *See Bazzetta II*, 430 F.3d at 803. Plaintiff therefore fails to state a procedural-due-process claim based on the loss of his visitation privileges with his mother.

### 5. Deprivation of Legal Materials and Access to Attorney

Plaintiff alleges that he was deprived of due process when he was forced to challenge his misconduct tickets and the confiscation of his property without access to his legal materials proving ownership and without access to an attorney. There is no free-standing liberty or property interest in defending a prisoner misconduct ticket. Plaintiff must identify some liberty or property interest, such as loss of good time credits, that will be affected by the misconduct ticket. Plaintiff has failed to do so here. None of the interests identified by Plaintiff qualify for due process protection for the reasons previously noted. He therefore was not entitled to any process before the

entitled to a hearing before he was transferred. He therefore fails to state a due process claim against Defendants.

Moreover, the mere fact that his transfer to a prison in another part of the state affected his 82-year-old mother's ability to visit him does not amount to an atypical or significant deprivation. As the Sixth Circuit held in *Bazzetta II*, 430 F.3d at 803, even a regulation that expressly restricts a prisoner's visitation rights does not ordinarily result in an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* (citing *Overton v. Bazzetta (Bazzetta I)*, 539 U.S. 126 (2003) (addressing the constitutionality of visitor restrictions under the First Amendment)). Here, Plaintiff does not contend that his mother's visits – or any other visits – are barred. He alleges only that, because his mother has difficulty traveling, she is unable to visit him at the more distant location. Such allegations fall far short of demonstrating a liberty interest protected by procedural due process. *See Bazzetta II*, 430 F.3d at 803. Plaintiff therefore fails to state a procedural-due-process claim based on the loss of his visitation privileges with his mother.

### 5. Deprivation of Legal Materials and Access to Attorney

Plaintiff alleges that he was deprived of due process when he was forced to challenge his misconduct tickets and the confiscation of his property without access to his legal materials proving ownership and without access to an attorney. There is no free-standing liberty or property interest in defending a prisoner misconduct ticket. Plaintiff must identify some liberty or property interest, such as loss of good time credits, that will be affected by the misconduct ticket. Plaintiff has failed to do so here. None of the interests identified by Plaintiff qualify for due process protection for the reasons previously noted. He therefore was not entitled to any process before the

alleged deprivations, much less a particular form of procedure that allowed him to present unlimited evidence and allowed him to be represented by an attorney.[3]

B. Intimate Association

Plaintiff next argues that he has been deprived of his right to intimate association by his transfer to a prison that is not easily accessible to his mother. The Supreme Court has recognized that "the Constitution protects 'certain kinds of highly personal relationships.'" *Bazzetta I*, 539 U.S. at 131 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 619-620 (1984)). Outside the prison context, the Court has recognized the existence of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents. *See Bazzetta I*, 539 U.S. at 131 (citing *Moore v. East Cleveland*, 431 U.S. 494 (1977) (plurality opinion); *Meyer v. Nebraska*, 262 U.S. 390 (1923)). The Supreme Court, however, has not yet determined whether and to what extent any right to intimate association survives incarceration. *Id.* However, in *Bazzetta*, the Court upheld Michigan regulations that denied all visitation, including non-contact visitation, with persons other than a prisoner's attorney or clergy member to those convicted of certain substance-abuse violations. The Court held that, because such limitations were rationally related to legitimate penological purposes and because other alternative means of communication were available, the total restriction on familial visitation was constitutional.

---

[3] The Court again notes that Plaintiff does not challenge the loss of good-time credits, the loss of which would be protected by the procedure set forth in *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (requiring (i) sufficient notice of a hearing; (ii) an opportunity to call witnesses and present documentary evidence; and (iii) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action). Moreover, even in circumstances in which a *Wolff* hearing is required, a prisoner is not entitled to the presence of an attorney. *See Lurz v. Carlson*, No. 86-5146, 1987 WL 36626, at *1 (6th Cir. Jan. 28, 1987) (holding that the narrow range of due process rights available under *Wolff* to prisoners facing a loss of good-time credits does not include the right to counsel).

*Id.* at 136 (applying the standard set forth in *Turner v. Safley*, 482 U.S. 78, 90 (1987) (establishing four-part standard for evaluating prison policies that affect prisoner constitutional rights).[4]

Here, Plaintiff does not allege that he has was subjected to any formal limitation on his familial visitation. He alleges only that, because of his prison location, his mother is effectively prevented by her age and health from traveling far to visit him. Such a consequential restriction is far less severe than the express restrictions upheld by the Supreme Court in *Bazzetta I*. And the courts routinely have recognized the prison's interest in determining where a prisoner will be placed. *See, e.g., Olim*, 461 U.S. at 246 (recognizing that overcrowding, the need to separate particular prisoners and other management issues all are legitimate penological concerns). Moreover, Plaintiff retains his right to communicate by both mail and telephone. *See Bazzetta I*, 539 U.S. at 135 (recognizing mail and telephone privileges as alternative forms of communication that are sufficient to satisfy *Turner*, 482 U.S. 78, 90 (1987). Plaintiff therefore fails to state an intimate-association claim.

    C.    Access to the Courts

Plaintiff suggests that the temporary delays in his receiving his legal property and contacting his attorney violated policy and denied him his constitutional right of access to the courts by restricting his ability to bring the best record evidence in defense of his misconduct charges. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*,

---

[4] While inmates retain certain First Amendment rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89. To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90.

430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Further, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim.

*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff does not allege that he was deprived of access to the state or federal courts to bring an appeal, a habeas application or a civil rights complaint. Indeed, Plaintiff has apparently brought the instant civil rights complaint without interference. He therefore fails to demonstrate actual injury.

Instead, Plaintiff alleges that the delay in his legal materials prevented him from successfully challenging the confiscation of his musical equipment. However, no court has extended a claim of access to the courts to include allegations that a prisoner was denied access to a state-provided procedure that was not itself constitutionally required. *See Laney*, 501 F.3d 577, 581 n.2 (an allegation that a defendant violated state policy does not rise to the level of a constitutional violation); *see also Smith*, 954 F.2d at 347-48. Further, as previously discussed, because Plaintiff had no constitutionally protected right to possess musical equipment in prison, he was not entitled to a procedural hearing under the Due Process Clause. If he was not constitutionally entitled to a hearing, he was not entitled to present particular evidence at that hearing. As a consequence, the lack of access to his legal materials during the misconduct process was not of constitutional significance.

In sum, because Plaintiff cannot show actual injury, he fails to state an access-to-the-courts claim.

D. <u>Retaliation</u>

Plaintiff broadly alleges that he was transferred to another prison in retaliation for exercising his rights to petition for redress of major misconducts and to file grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First-Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that he was transferred because he challenged the taking of his property, either in the misconduct proceeding or by way of some unspecified grievance. Indeed, he alleges that he was transferred only three days after he was charged with possession of contraband, well before he defended the misconduct charge. And, by his own allegations, his transfer was not retaliatory; instead, he alleges that "[t]he Transfer of Plaintiff was upon belief and motive that Plaintiff was in possession of illegally acquired music equipment and was involved with other inmates whom [sic] admit[t]ed guilt, when Plaintiff had no connection to them in this incident, except for the music store that all inmates at LCF were allowed to send their music equipment out for repairs." (Compl., ¶ 20, Page ID #9.) In other words, by Plaintiff's own admission, Defendants acted out of security concerns, not retaliatory motive. Even if Defendants were mistaken in their concerns, it is clear from Plaintiff's allegations that they were acting from a proper purpose.

In sum, because his allegations of retaliation are both conclusory and contradicted by his own declarations, Plaintiff fails to state a retaliation claim.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$455.00 appellate filing fee under § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   January 19, 2011            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE